Ex parte Carl Eugene JORDAN.

No. 71658.

Court of Criminal Appeals of Texas, En Banc.

June 29, 1994.

---

Carl Eugene Jordan, pro se.

John B. Holmes, Jr., Dist. Atty., Lynn Hardaway, Asst. Dist. Atty., Houston, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION*

MILLER, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to the

---

provisions of Art. 11.07, V.A.C.C.P. Applicant was convicted of theft of property over $10,000 and punishment, enhanced by proof of two prior felony convictions, was assessed at life imprisonment. Applicant's conviction was affirmed on appeal. *Jordan v. State*, No. 01–83–0366–CR (Tex.App.—Houston [1st Dist.], delivered October 25, 1984, pet. ref'd).

Applicant alleges that he was accorded ineffective assistance of counsel at trial in that his attorney failed to investigate the constitutional validity of a 1959 Louisiana conviction used for enhancement purposes at the punishment phase of his trial. Applicant had previously presented this allegation to this court, claiming that he was indigent and without counsel in the 1959 case, and that he had not waived counsel in the matter. The case was remanded for the trial court to hold a hearing in order to allow applicant to develop his allegations more fully. Specifically, the trial court was ordered to make findings of fact as to whether Applicant was represented by counsel in Louisiana in 1959, whether he was indigent and whether he waived counsel. The trial court was also directed to make further findings of fact and conclusions of law which the court deemed relevant and appropriate to Applicant's case.

The trial court held a hearing and subsequently recommended that relief be granted. We agree with that recommendation. Relief is granted and appellant's conviction in cause number 361714–E in the 230th District Court of Harris County is set aside. Copies of this opinion will be sent to the Texas Department of Criminal Justice, Institutional Division.

WHITE, J., dissents.

McCORMICK, Presiding Judge, dissenting.

The Sixth Amendment to the United States Constitution, in relevant part, says:

"In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

Not so long ago, the Sixth Amendment applied only to federal prosecutions. See *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); see also United States Constitution, Tenth Amendment. The Unit-

ed States Supreme Court had held the failure to appoint counsel for an indigent defendant in federal prosecutions not only violated the Sixth Amendment, but also was subject to collateral attack in federal habeas corpus proceedings. See *Custis v. United States*, —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (citation omitted).

However, with respect to state prosecutions, the United States Supreme Court in *Betts* held the Sixth Amendment right to counsel was not itself entirely made applicable to the states by the due process clause of the Fourteenth Amendment; the due process clause required the appointment of counsel for an indigent defendant in state prosecutions only upon a showing of "special circumstances." See *Betts*, 316 U.S. at 461–468, 62 S.Ct. at 1256–1258 (the due process clause does not embody an "inexorable command that no trial for any offense, or in any court, can be fairly conducted and justice accorded a defendant who is not represented by counsel"); see also *Custis*, —— U.S. at —— – ——, 114 S.Ct. at 1738.

After examining the historical underpinnings of the Sixth Amendment and despite prior rulings on what the Sixth Amendment required in federal prosecutions, *Betts* concluded the Sixth Amendment only was intended to do away with earlier rules which denied representation, in whole or in part, by counsel in criminal prosecutions, but it was not aimed to compel a state to provide counsel for a defendant.

"In the light of this common law practice, it is evident that the constitutional provisions to the effect that a defendant should be ' "allowed" ' counsel or should have a right ' "to be heard by himself and his counsel," ' or that he might be heard by ' "either or both," ' at his election, were intended to do away with the rules which denied representation, in whole or in part, by counsel in criminal prosecutions, but were not aimed to compel the state to provide counsel for a defendant. At the least, such a construction by state courts and legislators can not be said to lack reasonable basis."

*Betts*, 316 U.S. at 465, 62 S.Ct. at 1258. Although *Betts* was later overruled, see *infra*, these historical observations are still valid. And, I submit *Betts* is better reasoned and more true to principles of federalism than subsequent "right to counsel cases," see *infra*.

Apparently in an attempt to preserve some of the states' sovereignty guaranteed by the Tenth Amendment to the United States Constitution, *Betts* rejected the idea that the Fourteenth Amendment made applicable to the states the specific guarantees of the Sixth Amendment in all cases for all purposes, although "a denial by a state of rights and privileges specifically embodied in [the Sixth Amendment] and others of the first eight amendments may, in certain circumstances, or in connection with other circumstances, operate, in a given case, to deprive a litigant of due process of law in violation of the Fourteenth." *Betts*, 316 U.S. at 461, 62 S.Ct. at 1256. *Betts* adopted an "appraisal of the totality of facts in a given case" to determine whether an indigent defendant, unrepresented by counsel in state court, was denied the fundamental fairness guaranteed by the Fourteenth Amendment. *Id.* *Betts* warned against the danger of "falling into the habit of formulating the guarantee into a set of hard and fast rules the application of which in a given case may be to ignore the qualifying factors therein disclosed." *Id.* Texas followed *Betts* in determining whether an indigent defendant was entitled to appointment of counsel in a state prosecution. See Acts 1959, 56th Leg., p. 1061, ch. 484, section 1; now codified as Article 26.04, V.A.C.C.P.; see also Practice Commentary to Article 26.-04; see generally *Custis*, —— U.S. at ——-——, 114 S.Ct. at 1737.

However, all this changed on March 18, 1963. On that date, the U.S. Supreme Court articulated a more "enlightened" rule in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which holds the Sixth Amendment right to counsel is applicable to the states through the due process clause of the Fourteenth Amendment, and *all* indigent defendants in *all* state felony prosecutions have an entitlement to be represented by counsel at taxpayer expense absent a valid waiver.[1] See also *Custis*, —— U.S. at ——-——, 114 S.Ct. at 1737. This is so despite the fact *Gideon* arose out of a Florida prosecution and no Texas citizen was before the Supreme Court complaining about Texas' procedures for appointing counsel for indigent defendants.

*Gideon* declined to follow *Betts* because *Betts* "made an abrupt break with its own well-considered precedents." *Gideon*, 372 U.S. at 344, 83 S.Ct. at 796. However, Justice Harlan, concurring in *Gideon*, took the position that *Betts* "was in truth not a departure from, but an extension of, existing precedent," and he concurred apparently with the understanding that *Gideon* did not embrace the concept that the Fourteenth Amendment " 'incorporates' " the Sixth Amendment as such. *Gideon*, 372 U.S. at 349–52, 83 S.Ct. at 799–801 (Harlan, J., concurring). Justice Douglas opined that the Fourteenth Amendment incorporated the Sixth Amendment as such because " . . . . rights protected against state invasion by the Due Process Clause of the Fourteenth Amendment are not watered-down versions of what the Bill of Rights guarantees." *Gideon*, 372 U.S. at 345–47, 83 S.Ct. at 797–99 (Douglas, J., concurring).

Moreover, the U.S. Supreme Court, noting that *Gideon* was not limited to prospective

---

1. In another case decided on the same day as *Gideon*, which holds every indigent defendant is entitled to appointed counsel on appeal from a felony conviction in a state court based on Equal Protection and Due Process, Justices Harlan and Stewart warned of the "mischievous results" to occur in prohibiting the states "from adopting a law of general applicability that may affect the poor more harshly than it does the rich, or, on the other hand from making some effort to redress economic imbalances while not eliminating them entirely." *Douglas v. California*, 372 U.S. 353, 361–64, 83 S.Ct. 814, 818–20, 9 L.Ed.2d 811 (1963) (Harlan, J., dissenting). Justice Harlan took the position the Equal Protection clause does not impose upon the states " 'an affirmative duty to lift the handicaps flowing from differences in economic circumstances.' " *Douglas*, 372 U.S. at 362, 83 S.Ct. at 819 (Harlan, J., dissenting); but cf. *Edgewood Independent School District v. Kirby*, 777 S.W.2d 391, 398 (Tex.1989) (holding that Texas' school financing system as implemented in conjunction with local school districts containing unequal taxable property wealth violates the "efficiency" provision of the Texas Constitution).

applications, later held in *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), that an indigent defendant, like applicant here, has an entitlement to collaterally attack a felony conviction from state court where the defendant was unrepresented by counsel and did not validly waive counsel. See also *Custis,* —— U.S. at —— —— ——, 114 S.Ct. at 1738. March 18, 1963, therefore, generally marks the date Texas lost its sovereignty in "right to counsel" matters for indigent defendants. "So much for federalism." *McElwee v. State,* 589 S.W.2d 455, 460 (Tex.Cr.App.1979) (op. on remand from the U.S. Supreme Court) (quoted statement made in context of discussion by Presiding Judge Onion on federal law preempting Texas' procedural law on when jeopardy attaches in a criminal prosecution).

Based on the foregoing, applicant's 1959 Louisiana conviction violates the Sixth and Fourteenth Amendments.[2] However, I would hold the State's interest in the finality of applicant's 35–year–old conviction outweighs any interest applicant has in setting it aside based on a violation of the Sixth and Fourteenth Amendments. See *Custis,* —— U.S. at ——, 114 S.Ct. at 1739 (" 'inroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice"). Because the majority achieves a "mischievous result" by granting applicant relief in this case, I dissent.

---

[2] Here, the trial court recommended that relief be granted. Therefore, as the factfinder, it must have believed applicant's sworn testimony that he was indigent and without counsel in the 1959 case.